IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 5:07-CV-171 (DF) |
| | § | |
| VTECH COMMUNICATIONS, INC. and | § | |
| VTECH TELECOMMUNICATIONS, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

**O R D E R**

The above-referenced case was referred to Magistrate Judge Caroline Craven for pre-trial purposes in accordance with 28 U.S.C. § 636. Judge Craven recently issued a Report and Recommendation denying Defendants' Renewed Motion to Transfer Venue. Dkt. No. 134 (denying Dkt. Nos. 99 and 113). Presently before the Court are Defendants' Objections to the Report and Recommendation. Dkt. No. 144. Also before the Court are Plaintiff's response, Defendants' reply, and Plaintiff's sur-reply. Dkt. Nos. 150, 155, and 157. The Court held a hearing on the matter on July 8, 2009. Dkt. No. 187 (hearing transcript). After conducting a *de novo* review of the Magistrate Judge's report, the Court finds that Defendants' motions to transfer should be **DENIED**.

**I.  BACKGROUND**

Plaintiff Motorola, Inc. ("Motorola") filed this patent infringement action on November 13, 2007. Dkt. No. 1. Motorola alleges that Defendants VTech Communications, Inc. and VTech Telecommunications, Inc. (collectively "VTech") infringe U.S. Patent Nos. 4,866,766 ("the '766 Patent"), 5,157,391 ("the '391 Patent"), 5,394,140 ("the '140 Patent"), 5,848,356 ("the '356 Patent"), 7,070,349 B2 ("the '349 Patent"), and U.S. Design Patent No. 559,842 S ("the '842 Patent"). Dkt. No. 137 (Second Amended Complaint).

VTech filed its initial motion to transfer venue on January 17, 2008. Dkt .No. 13. Shortly thereafter, the Fifth Circuit vacated its ruling in *In re Volkswagen of America, Inc.* and granted Volkswagen's petition for rehearing *en banc*. 517 F.3d 785 (5th Cir. 2008). Faced with the uncertainty surrounding the applicable standard governing transfer motions in the Fifth Circuit, Magistrate Judge Craven dismissed VTech's motion without prejudice and invited VTech to renew its motion after the Circuit provided guidance in its *en banc* decision. Dkt. No. 86.

On October 29, 2008, after the Fifth Circuit issued its *en banc* ruling in *Volkswagen*, VTech appropriately renewed its motion to transfer venue. Dkt. No. 99. Magistrate Judge Craven considered the motion and issued a Report and Recommendation recommending that VTech's motion be denied under the *Volkswagen* standard. Dkt. No. 105. VTech filed objections to Judge Craven's Recommendation. Dkt. No. 108.

While VTech's objections were being briefed, the Federal Circuit released its *In re TS Tech* opinion, which further clarified the standards governing transfer motions in patent cases. *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2009). In response to the Federal Circuit's opinion, Judge Craven—on the very day the *TS Tech* opinion was released—vacated her Report and Recommendation to allow additional briefing on issues raised by the *TS Tech* opinion. Dkt. No. 112. After the parties had an opportunity to supply the Court with supplemental briefing (Dkt. Nos. 113-16), Judge Craven issued a Second Report and Recommendation, again recommending that VTech's transfer request be denied. Dkt. No. 134. This Second Report and Recommendation and VTech's objections thereto (Dkt. No. 144) are now presently before this Court.

There is a split in authority as to whether magistrate judges may fully determine or merely recommend disposition regarding motions to transfer venue. *See* Dkt. No. 134 at n.1. As a result, it is unclear whether a clearly erroneous or *de novo* standard applies to a district judge's review of

the magistrate judge's finding. *Id.* Without reaching the merits of this dispute, the Court finds that a *de novo* review is appropriate in this case because the Federal Circuit has recently released two opinions regarding transfer motions (*In re Genentech* and *In re Volkswagen*), which were not before Judge Craven. Therefore, the Court conducts a *de novo* review of VTech's motion to transfer venue.

## II. LEGAL PRINCIPLES

Title 28, section 1404(a) of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The Supreme Court of the United States has noted that Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court of Appeals for the Fifth Circuit has set forth that the first "threshold" determination a district court must make under Section 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). After such a determination, the district court must then consider the convenience of the parties and witnesses in both forums. *Id.*; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *Bolt v. Toyota Indus. Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex. 2004).

A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has

dispositive weight. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)); *TS Tech*, 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper*, 454 U.S. at 341 n.6); *see also TS Tech*, 551 F.3d at 1319.

A plaintiff has a "well-established" right to choose its forum. *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) (citing *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983)); *see Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (noting that plaintiff's choice of venue is "highly esteemed"). Accordingly, under Section 1404(a), the defendant has the burden to demonstrate that transfer is warranted. *Time*, 366 F.2d at 698. In a Section 1404(a) analysis, however, the plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314-15. Instead, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315; *TS Tech*, 551 F.3d at 1319. Also, although the private and public interest factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

4

### III.  THE PARTIES' POSITIONS & DISCUSSION

VTech requests that this case be transferred to the District of Oregon.  The initial inquiry in resolving a motion to transfer venue under § 1404(a) is whether the district court to which the movant requests transfer is a district in which the case could have been initially filed.  *Volkswagen II*, 545 F.3d at 312-13.  The parties do not contest that venue would have been proper had this case been brought in the District of Oregon because VTech is subject to personal jurisdiction therein.  The Court now moves to the second stage of the analysis, which considers the private and public interest factors restated in *In re Volkswagen*.

**A.**     **Private Interest Factors**

   *1.     Sources of Proof*

Despite technological advances that undoubtedly reduce the relative inconvenience of transporting documents across the country, this factor must still be considered.  *Volkswagen II*, 545 F.3d at 316.  This factor almost invariably turns on which party will most likely have the greater volume of relevant documents and their presumed physical location in relation to the venues under consideration.  *See, e.g.*, *Volkswagen II*, 545 F.3d at 314-15.

Defendants contend that the "vast majority of VTech's relevant documents and physical evidence . . . are located in or near [its U.S. headquarters in] Oregon."  Dkt. No. 144 at 6.  In response, Motorola argues that VTech is selectively focusing on evidence located near Oregon to the exclusion of evidence scattered around the country, including evidence at Vtech's own facilities in San Antonio, Texas and Motorola's evidence.  Dkt. No. 150 at 5-6.  Motorola's own evidence is arguably located closer to Texas than to Oregon—in Florida, Georgia, and Illinois.  *Id.*  In addition, Motorola argues that a significant amount of VTech's relevant evidence, specifically evidence related to the design and development of the accused products, is located in VTech's Hong Kong

5

facilities. *Id.*

In this case, a substantial number of relevant documents will likely be located at VTech's facilities. *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (noting that the bulk of the relevant evidence in patent cases usually comes from accused infringers). VTech's facilities, however, are located throughout the nation and the world. At the very least, VTech has current operations in Texas, Oregon, Missouri, New Jersey, Vancouver, and Hong Kong. *See* Dkt. No. 134 at 8-11. Thus, as the Magistrate Judge correctly stated, "Defendants have not shown the physical evidence in this case is confined to District of Oregon or even to the same [general] region." *Id.* at 10. Defendants have not even shown that *their own* relevant evidence is located in one region.

VTech would also have this Court (1) discount VTech's San Antonio facility and any relevant evidence located therein; and (2) find that it is more convenient to transfer evidence from Hong Kong to Oregon, than it is to transfer such evidence to Texas. The Federal Circuit's recent caselaw, however, suggests that such findings are inappropriate. First, the Circuit has emphasized the importance of "corporate documents relating to the development, manufacturing, and marketing" of the accused products. *Genentech*, 566 F.3d at 1345. The Court finds that VTech's distribution facility in San Antonio may likely contain relevant documents regarding the marketing of the accused products. The Court must consider the relative convenience of transferring those documents to Oregon if transfer in this case is ordered. Second, the Circuit has held that it is error for district courts to "rigidly" apply these factors to foreign sources of proof, which will have to travel great distances in any case. *See id.* at 1344. Any documents located in Hong Kong will have to be transported to the United States for this case. The added convenience of transporting them to Oregon rather than Texas is minimal at best and does not sway this Court's analysis in either direction.

As a result, the sources of proof connected to the accused products are located in both Oregon

and Texas. If this case is transferred to Oregon, the parties would have to transport relevant documents from Texas to Oregon. Thus, transfer in this case would merely shift inconvenience from one venue to another. Moreover, when the other likely sources of proof in this case are considered—including VTech's other facilities and Motorola's own facilities in Florida, Georgia, and Illinois—this Court cannot find that transfer to Oregon would be more convenient. To the contrary, access to some relative sources of proof would be more difficult if this case were transferred.

Defendants have not shown that the relative ease of access to sources of proof in the transferee venue is more convenient. This factor does not favor transfer.

      B.      *Availability of Compulsory Process*

This factor generally weighs in favor of transfer when more non-party witnesses reside within the proposed venue than in the plaintiff's chosen venue. *See Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" simply means that all relevant and material non-party witnesses reside within the subpoena power of a particular court. *See Volkswagen II*, 545 F.3d at 316; *Miller v. Longview Psychiatric Hosp., L.L.C.*, No. 2:08-CV-42, 2009 WL 748094, at *3 (E.D. Tex. March 19, 2009).

While VTech has stated that there are many VTech witnesses in Oregon (Dkt. No. 144 at 10), neither party has identified a non-party witness in Oregon. Dkt. No. 134 at 11-12. Thus, Defendants have not shown that any compulsory process is available in the transferee venue that would not be available here. Instead, transfer would merely reallocate inconvenience from one venue to another.

Because VTech has not shown the availability of any compulsory process within the transferee venue, this factor does not favor transfer.

### 3. Cost of Attendance for the Parties and Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. Further, courts are not to consider the "significance of the identified witnesses' testimony," at least not beyond "assess[ing] the relevance and materiality of the information the witness may provide." *Genentech*, 566 F.3d at 1343. The relative materiality of witnesses' testimony is irrelevant to this inquiry. *See id.* ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, for the transfer analysis, all potential material and relevant witnesses must be considered as offering testimony of equal importance.

The Fifth Circuit has adopted a "100 mile rule" to assist in analyzing this factor. *See Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205. When applying the "100 mile rule," the threshold question is whether the plaintiff's chosen venue and the proposed venue are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified relevant witnesses and the two venues under consideration. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. Finally, the Court should not "rigidly" apply the 100 mile rule to foreign witnesses, who "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1344.

In this case, the majority of VTech's identified witnesses reside in Oregon, Vancouver, and Hong Kong. For those witnesses residing in Oregon and Vancouver transfer would be more convenient. VTech's witnesses in Hong Kong, however, will have to travel a significant distance no matter where they testify. As a result, transfer would not necessarily be more convenient for VTech's foreign witnesses. With regard to Motorola's witnesses, the majority reside in the Chicago area and on the East Coast. Transfer to Oregon would not be more convenient for these witnesses and might actually be less convenient for some. Finally, non-party witnesses—including the inventors—in this case are spread throughout the country but can generally be said to reside in California, the Midwest, and the East Coast. One identified non-party witness does reside in the Eastern District of Texas.[1] Accordingly. transfer to Oregon may be more convenient for some non-party witnesses (those in California) but may also inconvenience others (those in the Midwest, Texas, and the East Coast).

Thus, while transfer to Oregon might be more convenient for some witnesses, it may likely be less convenient for others. There are, however, more witnesses in or very near Oregon than there are in Texas. As a result, this factor slightly favors transfer.

*4.    Practical Problems*

Practical problems may include those that are rationally based on judicial economy. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") (the creation of duplicative suits involving similar issues may be wasteful and is a "paramount consideration when determining whether a transfer is in the interest of justice"). Because § 1404(a) was designed to

---

[1] VTech asserts that the East Texas resident, Mr. Krupka, has no particular significance to this case. Dkt. No. 144 at n.4. As the Federal Circuit recently stated, however, it is not necessary at this time for the district court to evaluate the significance of an identified witness beyond a threshold showing of relevance and materiality. *Genentech*, 566 F.3d at 1344.

prevent waste and foster convenience, courts should consider "the wastefulness of time, energy, and money" that transfer might create. *Id.* Moreover, the interests of judicial economy may favor keeping or transferring a case to a court "that has become familiar with the issues" in a particular case. *Id.* (citing *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)).

Because VTech filed its initial motion in a timely manner, VTech argues that this Court should discount any prejudice that transfer may cause to the plaintiff and discount the interests of judicial economy. *See* Dkt. No. 187 at 6-7. As outlined above, VTech filed its first motion to transfer in January of 2008. Anticipation, however, of the Fifth Circuit's *en banc* ruling in *Volkswagen* caused this Court to delay disposition of the motion. Then, after Magistrate Judge Craven recommended the motion finally be denied, the Federal Circuit issued its decision in *TS Tech*, causing the Magistrate Judge to vacate her recommendation and request additional briefing.

Contrary to VTech's suggestion, any delay in the disposition of this motion has benefitted rather than prejudiced VTech. Based on the analysis above, this Court would likely have denied VTech's motion prior to the Fifth Circuit's ruling in *Volkswagen* and denied it again after the Federal Circuit's *TS Tech* ruling. This Court has allowed VTech to carry its motion until it could present it to the Court under recent caselaw that is more favorable to its position than the caselaw that existed at the time of its initial filing. The Court cannot, however, overlook the time and effort invested by the parties and the Court while Vtech's motion was pending.

Rather than find that transfer may result in prejudice and delay as the Magistrate Judge did, this Court finds that transfer would waste the time, energy, and money of both the parties and the judicial system. This Court has become intimately familiar with the issues in this case. The case has been pending in this Court for nearly two years and the Court recently completed claim construction, issuing a ninety-nine page order that construes 24 different claim limitations (Dkt. No.

179). Because the parties would likely be forced to re-educate the transferee court regarding many of these issues, this Court finds that the interests of judicial economy favor keeping the case with this Court.

Accordingly, this factor does not favor transfer.

**B.    Public Interest Factors**

*1.    Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *Genentech*, 566 F.3d at 1347. The *Genentech* court, however, additionally noted that this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *Id.* Since neither party has shown that this factor is applicable, the Court finds this factor neutral.

*2.    Local Interest*

Because the allegedly infringing products are sold nationwide, no one venue has "more or less of a meaningful connection to [this] case than any other venue." *In re TS Tech*, 551 F.3d at 1321 ("Here, the vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the [transferor court] have no more or less a meaningful connection to this case than any other venue."). This factor is therefore neutral.

*3.    Familiarity With the Governing Law*

Neither party has shown that this factor is applicable. The Court accordingly finds this factor neutral.

*4.    Avoidance of Unnecessary Conflict of Laws Problems*

Neither party has shown that this factor is applicable. The Court accordingly finds this factor

neutral.

Having considered the balance of the factors discussed above, the Court finds that VTech's motion to transfer should be denied. While only one factor sightly favors transfer, three do not favor transfer. On balance, Defendants have not proven that the transferee venue is clearly more convenient than the plaintiff's chosen venue.

### IV.  CONCLUSION

For at least the foregoing reasons, VTech's Motions to Transfer (Dkt. Nos. 99 and 113) are hereby **DENIED**.

**SIGNED this 3rd day of August, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE